**Madeline A. PENCHISHEN, Plaintiff,**

v.

**The STROH BREWERY CO., Defendant.**

No. 95–CV–7275.

United States District Court,
E.D. Pennsylvania.

July 24, 1996.

Richard J. Orloski, Orloski & Hinga, Allentown, PA, for Plaintiff.

Mark A. Fontana, Renee C. Mattei, Reed Smith Shaw & McClay, Harrisburg, PA, Eric Lemont, Reed Smith Shaw & McClay, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This is an employment discrimination action' brought by Plaintiff Madeline A. Penchishen, a former employee of Defendant The Stroh Brewery Company. In her Complaint, Plaintiff alleges that Defendant unlawfully terminated her employment on account of: (1) her alleged disability, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–13 (1995) ("the ADA") and (2) her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1985 & Supp.1996) ("the ADEA").[1] Defendant seeks summary judgment on the entire Complaint.

### STANDARD OF REVIEW

 This Court is authorized to award summary judgment "if the pleadings, depositions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to survive a summary judgment motion, the non-moving party must raise "more than a mere scintilla of evidence in its favor" and may not merely rely on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

## FACTUAL BACKGROUND

Taken in the light most favorable to Plaintiff, the facts are as follows.[2] In 1994, when she was discharged, Plaintiff was a 51 year old long-time employee of Defendant, working as a key punch operator in Defendant's data processing unit. In 1993, Plaintiff had been seriously injured in an automobile accident. As a result of the accident, she missed six months of work, but then returned in July, 1994 to her old position as a key punch operator.

A lasting result of Plaintiff's injury is the existence of a metal plate in her left ankle. Because of the plate, Plaintiff does not have full flex in her ankle and cannot walk at a normal gait or pace; rather, her pace is ½ as fast as it was before the accident. In addition, Plaintiff must use stairs by placing both feet on each step before moving to the next step.

Two months after Plaintiff returned to work, her key-punch job was eliminated in a cost-cutting measure along with several other jobs. Pursuant to her labor agreement with Defendant, Plaintiff was given the opportunity to "bid into" other open positions at Defendant. At a meeting with the Human Resources Director, Dave Lichtle, Plaintiff was told that there were two open positions; one in Packaging, one in Quality Assurance. Also at this meeting, Plaintiff and Lichtle discussed which job was best suited for Plaintiff based on her impairment. Lichtle allegedly told Plaintiff that the best job was in Quality Assurance and that he would assign her to that position. Plaintiff alleges that because of her seniority level, if she had elected the Packaging position, she would

---

1. In addition, the Complaint alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 (1994). In response to Defendant's motion, Plaintiff concedes that she cannot support her Title VII claim. Accordingly, summary judgment shall be granted on Count III.

2. Plaintiff fails to cite to the record in the Fact section of her brief. This Court has tried its best to track down the sources of Plaintiff's allegations, but has not been entirely successful. For example, Plaintiff asserts in her brief that "[i]n his deposition, [Defendant's director of Human

Resources] Mike Gray admitted that he never even reviewed Plaintiff's personnel file, and he was turning down Plaintiff's request for a reasonable accommodation because of his bias against Plaintiff because of her age and handicap." Pl.'s Br. p. 10. After reading all of Mike Gray's deposition, this Court only found a concession that Mr. Gray never read Plaintiff's personnel file, but nothing about a bias based on her age or disability. In this and like situations, this Court has not included those alleged facts in the instant Memorandum nor considered them in its decision.

have been awarded that job over the two women who did move to that department.

Far from being the best job for her, Quality Assurance turned out to be a very poor choice. The position involved walking between the plant laboratory and the plant floor several times a day to gather samples. These areas were divided by two sets of stairs totalling about 26 steps. The position also required Plaintiff to perform laboratory tests on the beer itself and the seals placed on the bottles.

Once on the job, Plaintiff's weekly performance reviews were not favorable and reflected that Plaintiff had difficulty learning the technical aspects of her job. Plaintiff alleges that many of her problems arose from the difficulty she had moving from place to place in a timely fashion. Because of Plaintiff's poor performance, Defendant arranged a meeting with her to terminate her before her 30–day probation period ended.

At that meeting, Plaintiff insisted that she could learn the Quality Assurance position if she had more time. In the alternative, she requested a transfer to Packaging, to a position she believed did not involve much walking. This request was subsequently denied and Plaintiff was terminated.

Plaintiff alleges that her Quality Assurance position was filled by a man in his twenties named Ronald Mihalko who had previously worked for Defendant as Summer Temporary Help. Mihalko started in Quality Assurance at the same time as Plaintiff and they were trained for the job simultaneously.

## DISCUSSION

### I. AMERICANS WITH DISABILITIES ACT

■ The ADA prohibits discrimination against qualified people with disabilities. A disability is:

1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

2) a record of such an impairment; or

3) being regarded as having such an impairment.

42 U.S.C. § 12102(2)(A). Courts must determine on a case by case basis whether a particular person has a disability. *Smaw v. Commonwealth of Va.*, 862 F.Supp. 1469 (E.D.Va.1994).

■ It is well established that not every physical impairment is a disability, because not every impairment substantially limits a life activity. *Nedder v. Rivier College*, 908 F.Supp. 66, 74 (D.N.H.1995). To determine whether an impairment is a disability, courts take a pragmatic, fact-intensive look at each plaintiff and determine:

1) the nature and severity of the impairment,

2) the duration or expected duration of the impairment, and

3) either the actual or the expected permanent or long term impact of or resulting from the impairment.

29 U.S.C. § 1630.2(j)(2). The key is whether the limitation is substantial, that is, what effect the impairment has on the life of the individual. 29 C.F.R. § 1630.2(j).

■ For example, if the affected major life activity is the act of working, courts ask whether the impairment poses a substantial barrier to all or most employment, or bars just one particular class or type of job. *Hughes v. Bedsole*, 48 F.3d 1376 (4th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995); *Welsh v. City of Oklahoma*, 977 F.2d 1415, 1417 (10th Cir.1992). If the major life activity is the act of walking, the plaintiff must show that he or she is substantially limited in walking. Not, for example, simply that plaintiff must use a handrail to climb stairs or must limit walking to less than one mile. *Kelly v. Drexel Univ.*, 907 F.Supp. 864, 874 (E.D.Pa.1995).

Defendant asserts that Plaintiff is not substantially limited in any major life activity and that therefore, she is not protected by the ADA. In opposition, Plaintiff maintains that she is disabled because she walks slowly and cannot use stairs as most people do. Further, Plaintiff points to her medical records, which show that her injury will worsen over time.

■ After carefully considering the matter, we hold that Plaintiff has not created an

issue of fact as to whether she is currently disabled. There is no evidence that she was *substantially* limited in walking; only that she walks and climbs stairs slowly. We find that her case is very similar to *Kelly*, 907 F.Supp. at 874, where our Court found that plaintiff was not *substantially* limited in the major life activity of walking even though plaintiff's ability to walk was limited in some ways.

In the alternative, Plaintiff contends that Defendant perceived her as disabled. It is undisputed that many of Defendant's management knew about Plaintiff's accident and injury and also that her impairment was apparent to any observer. In addition, Plaintiff points to Defendant's Human Resources director's testimony that he suggested the Quality Assurance job to Plaintiff because he thought it would be easier on her leg. Plaintiff maintains that she has demonstrated that Defendant perceived her as being disabled because anyone could tell that she was impaired and because one person in management made business decisions based on her impairment.

We agree that this evidence could show that Defendant believed Plaintiff had an impairment. We disagree, however, that the evidence creates a genuine issue of fact as to whether Defendant perceived Plaintiff's impairment as a substantial limitation on any major life activity. In fact, it tends to show that Defendant did not perceive Plaintiff as substantially limited in the activities of walking or working because it encouraged her to work in a position that required walking. Taking Plaintiff's evidence as true, therefore, there is no evidence that could support a reasonable jury's verdict that Plaintiff was perceived to be substantially limited in any major life activity. For these reasons, summary judgment is appropriately granted on Plaintiff's ADA claim.

## II. AGE DISCRIMINATION IN EMPLOYMENT ACT

Plaintiff alleges that Defendants violated the ADEA by firing her on account of her age. The ADEA is intended to "pro-mote employment of older persons" and prohibits firing people on account of their age. 29 U.S.C. §§ 621, 623. To state a prima facie case under the ADEA, a plaintiff must show that age was a determinative, but not necessarily sole, factor in the decision to discharge. *Billet v. CIGNA Corp.*, 940 F.2d 812, 816 (3d Cir.1991). This can be done circumstantially by showing that the plaintiff (1) is within a protected class, (2) was qualified for the position, (3) was dismissed despite those qualifications and (4) was replaced by someone sufficiently younger to permit an inference of age discrimination. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir.1992).

Here, Plaintiff insists that she has made out a prima facie case because she (1) was 51 years old when she was terminated, (2) was qualified for either a clerical position or another position with reasonable accommodation, (3) was terminated despite those qualifications and (4) was replaced by someone younger than her.

Defendant takes issue with Plaintiff's contentions that she was qualified and that she was replaced with a younger worker. We first look to whether Plaintiff has created an issue of fact as to whether she was replaced with a younger worker. Plaintiff's argument is basically that she, a 51 year old employee, was discharged, whereas Mihalko, a young employee, was retained.

Plaintiff concedes that Mihalko started in Quality Assurance at the same time she did, and that no one was specifically hired to replace her.[3] Our understanding of her argument is that, in fact, there was only one Quality Assurance position available when she and Mihalko were hired. Because Mihalko had worked on the factory floor, he adapted to his Quality Assurance job faster than she did and that therefore, Defendant retained Mihalko and discharged Plaintiff.

Although Plaintiff's brief on this point is murky, as we understand it, she contends that the fact that no one was hired to replace her proves that there was never a position for her. Rather, her hiring and then poor

---

**3.** It is apparently uncontested that several months after Plaintiff's discharge, Defendant filled an empty Quality Assurance position with a 52 year old man.

reviews may have been a subterfuge to allow Defendant to terminate Plaintiff and be able to truthfully say that no person "replaced" her, because the true occupant of the only available Quality Assurance position was already in place. If this is, in fact, Plaintiff's theory, it fails. She proffers absolutely no evidence that could support any aspect of this nefarious plot.

 That being said, we turn now to the evidence Plaintiff has proffered to determine whether it creates an issue of fact as to whether she was replaced by a younger worker. First, Plaintiff averred in her affidavit that her "Quality Assurance Job" was given to Ronald Mihalko, a young male in his 20's, who was a new hire with no seniority, and whose only experience with the company was as a "Summer Temporary Help." Pl.'s Aff. ¶ 57. This averment, however, is contradicted by Plaintiff's own deposition wherein she was questioned about this averment. In her deposition, Plaintiff conceded that Mihalko did not "replace" her, but was assigned to Quality Assurance and trained at the same time she was. Without sufficient explanation, a non-movant cannot create a genuine issue of fact via an affidavit that contradicts the party's own deposition testimony. *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir.1991) (quoting *Martin v. Merrell Dow Pharms., Inc.*, 851 F.2d 703, 706 (3d Cir. 1988)).

The only other evidence Plaintiff could base her age claim on is what a co-worker told her he overheard one manager tell another, namely, that management wanted Plaintiff out of the lab. Pl.'s Dep. at 170. Plaintiff conceded though, that she did not know whether management did not want her because of her age or for some other reason. *Id.* at 171.

 Given the lack of any evidence to support a finding that Defendant replaced Plaintiff with a younger worker, we cannot find that Plaintiff has made out a prima facie case under the ADEA. For that reason, we grant summary judgment on Plaintiff's ADEA claim.

An appropriate Order follows.

### ORDER

AND NOW, this 24th day of July, 1996, upon consideration of Defendant The Stroh Brewing Company's Motion for Summary Judgment and response thereto and in accordance with the attached Memorandum, the Motion is hereby GRANTED and Summary Judgment is hereby ENTERED in favor of Defendant The Stroh Brewing Company and against Plaintiff Madeline A. Penchishen on all counts.