**LA SALLE NATIONAL BANK, As Trustee under Pooling & Servicing Agreement dated as of May 1, 1998, Mortgage pass Through Certificates, Series 1998–C1, Plaintiff,**

v.

**FIRST CONNECTICUT HOLDING GROUP, L.L.C., XXIII, A New Jersey Limited Liability Company, James J. Licata, Hamilton Park Health Care Center, Ltd., A New Jersey Corporation, Public Service Electric & Gas Company, Richard Austin, McClinch Equipment Corp., and James Mitchell Construction Management, Defendants.**

**No. Civ. 00–3191.**

United States District Court,
D. New Jersey.

Aug. 22, 2000.

Philip Rosen, Stephen Ellman, Zeichner Ellman & Krause LLP, Newark, NJ, for plaintiff.

James Scarpone, Hellring Lindeman Goldstein & Siegal LLP, Newark, NJ, for defendant.

Pieter de Jong, First Connecticut Holding Group, LLC XXIII, Long Valley, NJ, general counsel.

## OPINION

HOCHBERG, District Judge.

This matter is raised by the Court *sua sponte* by way of an Order to Show Cause, in response to Zeichner Ellman and Krause's conduct in this action. The Court has reviewed the submissions of the parties, and the arguments and evidence presented by counsel at the hearing held before this Court on July 14, 2000. While the sanctioning of an attorney is perhaps the most unpleasant of all duties a judge must perform, it is also among the most important. Activities by attorneys which lead to duplicitous and vexatious litigation are a waste of limited judicial resources and erode the public's confidence in the profession. *Comuso v. Nat'l Railroad Passenger Corp.*, 2000 WL 502707 *4, 2000 U.S. Dist. LEXIS 5427, * 9–12 (E.D.Pa. April 26, 2000). For the following reasons this Court finds that Philip S. Rosen, Esq. and Stephen Ellman, Esq. of Zeichner Ellman & Krause, LLP, have violated 28 U.S.C. § 1927 and are, therefore, responsible for the additional expenses incurred by Hellring Lindeman Goldstein & Siegal, LLP, in bringing this egregious conduct to the attention of this Court and in seeking vacatur of the Court's Order entered as a result of the reprehensible and wilful bad faith conduct of the aforementioned attorneys. Philip S Rosen, Esq. and Stephen Ellman, Esq. are also responsible for the costs and fees incurred by New Vistas Corporation, the receiver, from June 30, 2000 through July 10, 2000 Such expenses are the direct result of counsels' misleading conduct before this Court.

## BACKGROUND

Plaintiff's counsel, Mr. Philip S. Rosen and Mr. Stephen Ellman, filed a foreclosure action before this Court on June 29, 2000. Accompanying the complaint was an emergent motion for the appointment of a rent receiver and temporary restraints. The Court inquired of Mr. Rosen whether all parties had been served with the motion. Mr. Rosen responded that all parties had been served, and that defense counsel was prepared to appear that same day to address the motion.

The Court informed Mr. Rosen that the matter did not warrant an immediate hearing. Instead, the Court indicated to Mr. Rosen that a briefing schedule would be established and that at the conclusion of the briefing, the Court would determine whether a hearing was necessary. Upon receiving this information, Mr. Rosen informed this Court that the motion should be granted immediately because it was unopposed. Mr. Rosen further stated that plaintiff had reached an agreement with defendants regarding who would be appointed as rent receiver. The Court instructed Mr. Rosen to provide written confirmation to that effect from defense counsel. In direct response to the Court's request for a writing from defense counsel. Mr. Rosen produced a letter signed by a Mr. Pieter de Jong, Esq. Mr. Rosen indicated that the letter represented " 'defense counsels' " consent to the motion for the appointment of a rent receiver.

Based on Mr. Rosen's representation that the motion was unopposed, this Court did not establish a briefing schedule and instead entered plaintiff's proposed form of Order on June 30, 2000. Certain portions of the Order were hand annotated by the Court to reflect Mr. Rosen's oral and written representation that it was being entered upon the consent of "defense counsel".

In point of fact, the motion was not unopposed. This Court thereafter re-

ceived a letter brief from Hellring Lindeman Goldstein & Siegal LLP ("Hellring Lindeman"), counsel for defendant, Hamilton Park Health Care Center, Ltd. ("Hamilton Park"). The letter submission indicated that defendant Hamilton Park opposed the motion, and had not been notified of the motion prior to the entry of the "consent" Order, notwithstanding its status as a defendant in the case. The letter also informed this Court that there was pending state court litigation in the Chancery Division, Essex County, New Jersey, and that the Superior Court had already appointed a fiscal agent over the same properties which were the subject of the federal action. The state court having already experience its jurisdiction, Hamilton Park's counsel raised the issue of abstention under the doctrine enunciated in *Princess Lida*.

Upon receipt of Hellring Lindeman's letter, this Court established a briefing schedule and informed the parties that they were to brief the issue of the pending state court action, the parties' knowledge of such action, and whether this Court was required to abstain from hearing the foreclosure action based on the principles enunciated in *Princess Lida*. A hearing on these issues was held on July 10, 2000. This Court vacated its previous Order entered on June 30, 2000, *nunc pro tunc*;

upon a finding that plaintiff's counsel had mischaracterized the motion as "unopposed" when, in fact, there was opposition to the motion. The July 10, 2000 hearing also convinced this Court that the costs incurred by the rent receiver for the brief period June 30–July 10 should be borne by plaintiff's counsel, as those costs would not have been incurred but for counsel's misrepresentations to this Court. The issue of abstention was taken under advisement.

 The hearing on July 10, 2000, raised serious questions about the conduct of plaintiff's counsel during this litigation, specifically in relation to the plaintiff's motion for the appointment of a rent receiver. Therefore, the Court issued an order to show cause why sanctions under 28 U.S.C. § 1927 or this Court's inherent powers should not be imposed upon plaintiff's counsel, Mr. Rosen and Mr. Ellman, for making material misrepresentations and omissions in the conduct of this litigation.[1] The parties were afforded an opportunity to make written submissions, and to offer evidence and legal arguments at a hearing.[2] Having reviewed the record and the law, this Court will sanction Mr. Rosen and Mr. Ellman, under 28 U.S.C. § 1927, and will decline to rely on its inherent power.[3]

---

1. Mr. Ellman, although not admitted to the Bar of this Court, made substantial presentations to this Court at the July 10, 2000 hearing. Mr. Ellman's presentations were independent of his responses to direct questions from this Court. While Mr. Ellman's practice of law before this tribunal is a clear ethical violation, this Court will not sanction Mr. Ellman on this basis. Mr. Ellman did not receive notice and an opportunity to be heard on the issue of his liability for his practice of law before this Court because the Court was not aware that Mr. Ellman was not a member of this Court's Bar until the July 14, 2000 hearing on the Order to Show Cause why Sanctions Should Not Be Imposed. Therefore, due process considerations prevent this Court from imposing sanctions on Mr. Ellman for this conduct.

2. A lawyer is entitled to certain due process protections before a court may sanction the

lawyer for his conduct in the litigation. *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994) (*citing Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). In particular, an attorney is entitled to specific notice and an opportunity to be heard. *Fellheimer, Eichen & Braverman v. Charter Technologies, Incorporated*, 57 F.3d 1215, 1228 (3d Cir.1995).

3. "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power." *Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania*, 103 F.3d 294, 298 (3d Cir.1996) (*quoting Chambers v. NASCO*, 501 U.S. 32, 111 S.Ct. 2123, 115

## STANDARD

■ 28 U.S.C. § 1927 provides,

"any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Sanctions imposed under § 1927 are directed at the attorney, and should not be imposed upon the client *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184, 1190 (3d Cir.1989).

■ A finding of bad faith is central to the imposition of sanctions under § 1927 *In re Orthopedic Bone Screw Prods.,* 193 F.3d 781, 795 (3d Cir.1999); *Baker Industries, Incorporated v. Cerberus Limited,* 764 F.2d 204, 208 (3d Cir.1985). "The intentional advancement of a baseless contention that is made for an ulterior purpose, [ ], may support a finding of bad faith." *Ford v. Temple Hospital,* 790 F.2d 342, 347 (3d Cir.1986) (internal citations omitted). A finding of willful bad faith is a factual determination. *Hackman v. Valley Fair, et. al.,* 932 F.2d 239, 242 (3d Cir. 1991). Where this Court determines that the attorney has acted in bad faith, "the appropriateness of sanctions is a matter entrusted to the discretion of the district court." *Id.*

■ Sanctions imposed under this section are designed to deter "intentional and unnecessary delay in the proceedings." *Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania,* 103 F.3d 294, 297–98 (3d Cir. 1996) (internal citations omitted). As such, "imposition of attorney's fees and costs under section 1927 is reserved for behavior of an egregious nature, stamped by bad faith that is violative of recognized

standards in the conduct of litigation." *In re Orthopedic Bone Screw Prods.,* 193 F.3d at 795. Stated another way, sanctions should be imposed under section 1927 only when an attorney "willfully abuses the judicial process." *Id.*

■ "In order to impose sanctions under section 1927, the court must find: (1) a multiplication of proceedings by an attorney; (2) by conduct that can be characterized as unreasonable and vexatious; with (3) a resulting increase in the cost of the proceedings; and (4) bad faith or intentional misconduct." *In re Prudential Ins. Co. of America Sales,* 63 F.Supp.2d 516 (D.N.J.1999) (citing *Williams v. Giant Eagle Mkts., Inc.,* 883 F.2d 1184, 1191 (3d Cir.1989)).

### DISCUSSION

■ Mr. Rosen and Mr. Ellman fall squarely within the four prong test used in this Circuit to determine whether an attorney should be sanctioned under 28 U.S.C. § 1927. The unreasonable and vexatious conduct of both attorneys evidenced bad faith, multiplied the proceedings, and increased the cost of this litigation. *Baker Industries, Inc. v. Cerberus Ltd.,* 764 F.2d 204, 208 (3d Cir.1985).

*(I) Multiplication of Proceedings*

Mr. Rosen and Mr. Ellman falsely represented to this Court that their motion to appoint a rent receiver was unopposed. They also concealed from this Court the full extent of pending state court proceedings involving the same property, in which the same relief sought had already been denied by the state court. These false and misleading representations led this Court to enter the form of Order prepared and submitted by Mr. Rosen and Mr. Ellman. The Court modified the Order to reflect counsels' representation that the motion was unopposed by defense counsel.

L.Ed.2d 27 (1991)). In this case the statute is up to the task and there is no need for this

Court to rely on its inherent power.

As a result of the entry of the Order, defendant Hamilton Park—who had never been notified of the pending motion for the appointment of a rent receiver and who did not consent to the appointment of the receiver—expended valuable time, energy and resources to: (1) Oppose the entry of the Order; (2) move for vacatur of the "consent" Order; (3) inform this Court of the existence and nature of the state court proceedings; and (4) educate this Court on the misstatements and omissions of plaintiff's counsel. None of these actions would have been necessary in the absence of the intentional misconduct of Mr. Ellman and Mr. Rosen.

The multiplication of proceedings resulting from the conduct of the aforementioned counsel is self-evident. As a result, the first prong of the sanctions test is met.

## II. Unreasonable and Vexatious Nature of the Conduct

It is axiomatic that all parties must be served with a copy of all documents filed before the Court, unless otherwise ordered by the Court. Fed.R.Civ.P. 5(a).[4] Mr. Ellman and Mr. Rosen made a deliberate decision to serve only one defendant with their motion for the appointment of a rent receiver. They made this decision notwithstanding their knowledge of the Federal Rules of Civil Procedure ("FRCP"). The decision was made after Mr. Rosen researched the issue and found no authority supporting the proposition that all parties do not need to be served with a motion for the appointment of a rent receiver. These facts alone are sufficient to convince

this Court that Mr. Ellman and Mr. Rosen acted unreasonably and vexatiously.

However, counsels' errors did not end with their blatant disregard for the FRCP. Instead, the proceedings before this Court revealed that counsel was aware of, and actually attended, the proceedings in state court. First Connecticut Holding Group XXIII[5] ("First Connecticut") requested the appointment of a rent receiver to administer these same properties in the state court litigation. Judge Fuentes denied that motion, and instead appointed a fiscal agent. Mr. Ellman and Mr. Rosen were aware that First Connecticut's request for the appointment of a rent receiver was denied. Yet they proceeded to obtain First Connecticut's "consent" to their motion before this Court, seeking the same relief in federal court that had been denied in state court, knowing that First Connecticut was actually an aligned party and failing to notify any actually adverse party of the pending application. In essence, Mr. Ellman and Mr. Rosen worked to obtain the consent of a party whom they *knew* shared their interest in the appointment of a receiver, and deliberately failed to notify the party they knew to be in opposition, and Mr. Rosen then represented to this Court that the motion was "unopposed". This blatant misrepresentation to this Court resulted in the mistaken entry of a Consent Order which was stated to be unopposed, when, unknown to this Court it was, in fact, hotly contested.

Finally, Mr. Rosen and Mr. Ellman failed to inform this Court of the true scope of the pending state court proceedings, and of Judge Fuentes' denial of the

---

4. Fed.R.Civ.P. 5(a) provides, in pertinent part: "Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal,

and similar papers shall be served upon each of the parties." Mr. Rosen did not seek to have the motion for the appointment of a rent receiver heard *ex parte*, but rather stated that defense counsel did not oppose the motion.

5. In the instant case, First Connecticut Holding Group XXIII was the only defendant to receive notice of and consent to plaintiff's motion for the appointment of a rent receiver.

motion to appoint a rent receiver in state court, and that a fiscal agent had already been appointed for the same property Counsels' conduct was an attempt to make an end run around the state court, and to secure relief that the state court was unwilling to grant. These omissions and misstatements, coupled with counsels' failure to observe the most basic tenets of the FRCP, were unreasonable and vexatious. Prong two of the sanctions test is, therefore, satisfied.

### III. Resulting Increase in the Cost of the Proceedings

As this Court set forth fully in section I, *supra*, there is no doubt that counsels' unreasonable and vexatious conduct in this case resulted in an increase in the cost of the proceedings to defendant Hamilton Park. Because of counsels' misrepresentations, omissions and failure to comply with the FRCP, defendant Hamilton Park was forced to seek vacatur of this Court's order, and to appear at two hearings held by this Court in an effort to rectify the untenable situation. Furthermore, New Vistas Corporation, the receiver improvidently appointed by this Court as a result of counsel's misrepresentations, incurred substantial costs in preparing to fulfill its duties under the June 30, 2000 "Consent" Order. The resulting increase in cost is directly attributable to the actions of Mr. Rosen and Mr. Ellman, and prong three of the sanctions test is satisfied.

### IV. Bad Faith or Intentional Misconduct

As the foregoing discussion indicates, there is no doubt that Mr. Rosen and Mr. Ellman acted intentionally and in bad faith. As Mr. Rosen disclosed at the sanctions hearing, he researched the law to

determine whether he was, in fact, required to notify all defendants of his motion to appoint a rent receiver. When he found *no* support for his decision not to notify all defendants of his motion, he made an independent, incorrect and wilful decision not to comply with the FRCP in order to make a quick end run around the state court because his client did not want to be caught up in the complicated state court proceedings.

As stated above. Mr. Rosen then represented to this Court that his motion was unopposed, and this Court entered Mr. Rosen's proposed Order, annotated to reflect Mr. Rosen's representation that "defense counsel"[6] did not oppose the motion.

This Court later also learned that: (1) Plaintiff's counsel was aware of the pending state court proceedings, and was actually present during arguments on important motions, (2) Plaintiff's counsel had made no attempt to notify defendant Hamilton Park of the motion for the appointment of rent receiver, and (3) that Messrs. Rosen and Ellman knew that Hamilton Park would likely oppose the motion.

This Court issued an Order to Show Cause why sanctions should not be imposed against Mr. Ellman and Mr. Rosen for their conduct before this Court. The Order to Show Cause specifically informed Mr. Ellman and Mr. Rosen that this Court was considering imposing sanctions under both its inherent power and 28 U.S.C. § 1927. A briefing schedule was established, and a hearing was held on July 14, 2000. At the hearing, counsel for Mr. Ellman and Mr. Rosen presented arguments and evidence, including Mr. Rosen's testimony.

6. Although Mr. Rosen later testified that he stated to this Court that "borrower's counsel" did not oppose the motion, this Court finds, as a matter of fact, that Mr. Rosen's testimony is simply not credible. The Court was explicitly told by Mr. Rosen that the motion was "unopposed", and in response to this Court's request for a written certification confirming that "defense counsel" did not oppose the motion, Mr. Rosen produced the letter from Mr. de Jong, again stating that the letter confirmed that "defense counsel" did not oppose the motion. Following Mr. Rosen's representation that "defense counsel" did not oppose the motion, the Court inserted the words "and defense counsel having submitted a letter to this Court indicating that it does not object ..." into the "Consent" Order.

Counsel's presentation only further convinced this Court that the actions of Mr. Rosen and Mr. Ellman were undertaken wilfully and in bad faith. For example, in response to this Court's request for an explanation of why the pending state court proceedings were not brought to the attention of this Court, counsel responded that the proceedings were "fully disclosed". In defending this position, counsel actually argued that the solitary mention of the state court proceedings in a single footnote, buried deep in a Certification of the client was "full disclosure" When this Court questioned the assertion that the state court proceedings were "fully disclosed," counsel stated that the disclosure was complete because the footnote was "prominent", occupying "two inches" of space on the bottom of page 11 of the Certification. This Court does not agree that a single footnote in a lengthy Certification constitutes "full disclosure" of vital information, moreover this Court never undertook an analysis of the fine points of the Certification because counsel falsely represented to this Court that the motion was unopposed almost immediately after filing the motion.

Finally, the Court notes that no less than six pages of plaintiff's primary briefs and pleadings to this Court were devoted to a discussion of the joint venture agreement that is the subject of the ongoing state court proceedings. Yet *nowhere* in counsel's brief is there any disclosure that parallel contentious litigation was well underway in state court. This Court finds that Plaintiff's counsel withheld the information about the pending state court litigation intentionally, and in bad faith. *Hackman v. Valley Fair, et. al.*, 932 F.2d 239, 242 (3d Cir.1991).

### CONCLUSION

Having determined that Mr. Rosen and Mr. Ellman's unreasonable, vexatious and intentional misconduct was undertaken in bad faith and resulted in a multiplication of proceedings and an increase in the costs of the proceedings, this Court will sanction Mr. Rosen and Mr. Ellman in accordance with 28 U.S.C § 1927 An appropriate order identifying the terms of the sanction will issue.