

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2006

# Dashner v. Riedy

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4071

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Dashner v. Riedy" (2006). *2006 Decisions.* Paper 735.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/735

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-4071

———

*Gwendolyn Dashner, John Hirko, Sr., Kristin Fodi,
and Tuan Hoang, by, through, and with their
Attorney of Record, **John P. Karoly,
                                                    Appellants
                              v.

JOSEPH EDWARD RIEDY, Individually,
and the CITY OF BETHLEHEM


*Amended November 9, 2004
**{Pursuant to Rule 12(a), F.R.A.P.}

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No.  99-cv-02124)
District Judge: Honorable James K. Gardner


———

Submitted Under Third Circuit LAR 34.1(a)
July 10, 2006

Before: SLOVITER, McKEE and RENDELL, Circuit Judges

(Filed July 19, 2006)

———


OPINION

SLOVITER, Circuit Judge.

This case highlights the delays, disruptions and squandering of judicial resources that can be the byproduct of opposing counsels' failure to maintain a courteous relationship throughout a litigation. Plaintiffs (here, inclusive of counsel Karoly) appeal an order of sanctions imposed under 28 U.S.C. § 1927 for costs and fees incurred due to delays in finalizing a settlement of a wrongful death suit against the city of Bethlehem, Pennsylvania, and several of its officials and police officers. Plaintiffs argue, inter alia, that the District Court erred in denying their motion for reconsideration because they were never served with the motion for sanctions, and therefore, their failure to respond to that motion was excusable neglect. They argue that the imposition of sanctions violated their due process rights because they were never afforded a hearing or an opportunity to respond to the defendants' motion for sanctions.

This court has jurisdiction under 18 U.S.C. § 1291. See Zuk v. E. Pa. Psychiatric Inst., 103 F.3d 294, 296 n.1 (3d Cir. 1996). Because we write primarily for the parties, their counsel, and the District Court, who are familiar with the facts, we set forth only those facts relevant to our disposition.

**I.**

The lawsuit underlying this dispute arose from the execution of a search warrant by the "Emergency Response Unit"of the Bethlehem Police Department on April 23, 1997, at the rented house in Bethlehem in which John Hirko and his girlfriend Kristen

Fodi lived. We do not reprise the conduct of the police in the course of the raid as it is not an issue before us. It is sufficient to note that when the police entered the premises they fired sixteen rounds, killing Hirko, who was unarmed, and the grenade they used ignited a fire that destroyed the residence. Fodi, who was also inside the house during the raid, was forced to jump from a second story window in order to save herself.

Fodi, Hirko's parents, and the owner of the house sued the City of Bethlehem, the police officers involved in the raid, and various other officials, for damages incurred due to the wrongful death of Hirko and the destruction of the residence. The plaintiffs were represented by John P. Karoly. The District Court bifurcated the trial into liability and damages phases. The liability portion of the trial resulted in a jury verdict for the plaintiffs in March of 2004. The parties subsequently settled for $7,890,000 in damages, inclusive of attorneys' fees and costs.

The District Court approved the settlement on March 22, 2004 after a hearing. The parties stipulated that the District Court was to retain jurisdiction over the matter until the settlement conditions had been fully performed. One of those conditions was that the plaintiffs would sign a release of liability and provide it to the defendants.

Of the total settlement of $7,890,000, $7,490,000 was payable by the City of Bethlehem, and the remaining $500,000 by its insurance carrier, Western World Insurance Company. The City paid its portion on May 26, 2004, via check delivered to plaintiffs' attorney, and plaintiffs provided the City attorney with a signed and notarized

3

release for the <u>full</u> amount of the judgment. It is unclear when the District Court was informed that a release had been provided to the City attorney, but its subsequent orders reflect understanding of that fact. The difficulty counsel for both sides had negotiating the exchange of the remaining $500,000 owed by Western World gave rise to the motion for sanctions.

Defendants demanded that Western World be provided with a copy of the release, which plaintiffs' counsel had forbidden the City Attorney to share, as plaintiffs were awaiting receipt of the $500,000. Plaintiffs' counsel stated that no release would be provided unless personal property of Hirko still in the possession of the City of Bethlehem were returned to Hirko's parents, although that does not appear to have been a condition of the settlement. He also demanded that the $500,000 be paid in certified funds or by wire transfer and that Western World pay interest from the date of judgment. Although defense counsel informed plaintiffs that the "legal staff within the City is making arrangements to return [Hirko's] personal property," defense counsel specifically objected to the addition of any terms to the settlement. App. at 201.

After unsuccessfully trying to pay the remaining $500,000 with Western World's non-certified check, defendants filed a motion to enforce the settlement on June 3, 2004. This motion appears on the docket as "Defendants' Motion to Enforce Settlement Agreement Filed By Bethlehem Police Dept., City of Bethlehem, Memorandum, Certificate of Service. (ac,) (Entered: 06/03/2004)." App. at 139. In their motion,

4

defendants asked the District Court to require plaintiffs to provide them a copy of the executed release, and to order that no interest was owed on the remaining $500,000. Defendants also asked the District Court to require plaintiffs to pay fees and costs associated with the delay. After a telephone conference between the Court and the parties, the District Court by order dated June 9, 2004, granted the motion in part and denied it in part.

The June 9th order directed the plaintiffs to serve upon defense counsel "a release in accordance with the settlement agreement" no later than June 10, 2004, and directed defense counsel to serve upon plaintiff's counsel a check for $500,000 within two business days of receiving the release. App. at 216. The Court noted that "the settlement agreement approved and adopted by the court on March 22, 2004 contains no requirement that payments made in satisfaction of judgment be made by certified check." App. at 216 n.2. The District Court denied the remainder of the defendants' motion, including the request for sanctions. The Court noted that the defendants could seek sanctions by separate motion and that the plaintiffs could raise the question of whether they were entitled to interest in a separate motion.

This order did not resolve the dispute. When defense counsel informed Karoly that Western World would be unable to provide certified funds, plaintiffs refused to furnish a copy of the release. Instead, plaintiffs faxed a release specifically conditioned on the receipt of certified funds. In response, defendants filed a second motion on June

5

28, 2004, captioned "Defendants' Motion to Enforce the Settlement Agreement." This motion was entered on the docket sheet as "Defendants' Motion to Enforce Settlement Agreement Filed by Bethlehem Police Dept. et al., City of Bethlehem, Western World Insurance Company, Inc.,Memorandum, Certificate of Service. (ac, )(Entered: 06/29/2004)." App. at 139. The docket entry does not mention sanctions and is nearly identical to the entry for the defendants' prior motion, although the motion itself states that Defendants "hereby file the instant Motion for Sanctions." The memorandum attached to the motion was entitled a Memorandum of Law in Support of Defendants' Motion for Sanctions which referred to sanctions under 28 U.S.C. § 1927. This memorandum was not separately entered on the docket sheet.

The defendants argued that sanctions were warranted because plaintiffs had ignored the Court's June 9th order, and engaged in "bad faith and intentional actions" that had "increased the costs of the proceedings (finalizing settlement) with regards to the defendants." App. at 227. Plaintiffs failed to respond to the motion within fourteen days, as required by local rules. E.D. Pa. Local R. Civ. P. 7.1©. Accordingly, the District Court granted the motion as unopposed on July 16, 2004. E.D. Pa. Local R. Civ. P. 7.1©. The July 16th order directed plaintiffs' counsel Karoly "as previously directed" by the June 9th order to provide defense counsel with a signed and notarized copy of the release within one day, ordered defense counsel to provide plaintiffs' counsel a check for $500,000 in non-certified funds, and ordered plaintiffs and plaintiffs' counsel to pay "all

6

reasonable costs and fees incurred by Defendants and their Insurer . . . in attempting to finalize the instant settlement." App. at 5. Defendants were ordered to provide the District Court with an accounting of the fees and costs within ten days.

On appeal, Karoly contends that he did not receive a copy of the July 16th order until July 19, 2004, when he received faxed copies from the District Court and the defense. Karoly sent a letter to the District Court by facsimile that day, July 19, 2004, stating that he had not been aware of the defense's motion for sanctions until he received the order and that he would like the opportunity to respond. He also stated that he would file a Motion for Reconsideration. On July 21, 2004, defendants submitted their accounting to the District Court, requesting $13,606.44 in costs and fees incurred in finalizing the settlement. On July 23, 2004, the District Court ordered "plaintiffs and plaintiffs' counsel, jointly and severally," to pay defense counsel $13,606.64 in costs and fees. App. at 9.[1]

On July 26, 2004, Karoly filed a motion for reconsideration, asking the District Court to vacate the order imposing sanctions and to allow him an opportunity to file an answer. The District Court denied the motion for reconsideration by order dated September 30, 2004. In a Memorandum Opinion filed in response to the notice of appeal, the District Court stated that sanctions were appropriate under 28 U.S.C. § 1927 because

---

[1]  The 20 cent discrepancy between the accounting submitted by the defendants, and the amount the District Court ordered plaintiffs to pay appears to have been inadvertent.

7

plaintiffs' counsel had multiplied proceedings "unreasonably and vexatiously" by insisting on payment by certified funds, and by attempting to attach conditions to the settlement. App. at 25. The Court concluded that "sanctions were appropriate on the merits, [and] not merely because of Mr. Karoly's failure to respond to defendant's motion for sanctions." App. at 27.

## II.

The issue before us is whether the District Court abused its discretion in denying Karoly's motion for reconsideration of the court's order of sanctions. Hackman v. Valley Fair, 932 F.2d 239, 242 (3d Cir. 1991). Karoly also asks us to review the District Court's imposition of sanctions. When the procedure employed by the district court in imposing sanctions raises due process concerns, our review is plenary. Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 175–76 (3d Cir. 1999).

In this case we are hampered in our review of both issues because the District Court failed to hold a hearing on the motion for sanctions and to make findings of fact. Our cases have made clear that imposition of sanctions violates due process if the order was made without particularized notice and an opportunity to be heard. Martin v. Brown, 63 F.3d 1252, 1262–63 (3d Cir. 1995); Eash v. Riggins Trucking, Inc., 757 F.2d 557, 570–71 (3d Cir. 1985). Karoly contends that he had neither the required notice nor the opportunity to be heard.

It appears from the District Court's Memorandum Opinion that the Court based its

8

order granting sanctions at least in part on the fact that plaintiffs did not file a response to defendants' motion for sanctions. Karoly contends that he was not apprised of the motion until the time to respond had elapsed and the District Court had entered its order imposing sanctions on June 16, 2004. Defendants contend that the motion was served on Karoly by regular mail. Karoly states that every other defense motion filed in this case over the last five years had been faxed or sent by Federal Express and suggests that defendants intentionally used a less expeditious service method and titled the motion deceptively. According to the record available to us, the defense did send its previous motion to enforce the settlement by Federal Express, not regular mail. Karoly also contends that the defendants' own certificate of service indicates that he was not served with the memorandum attached to the motion which was addressed to sanctions.

The District Court concluded that plaintiffs had received adequate notice of the defendants' motion. The Court noted that the "motion to enforce settlement agreement," which was accompanied by a memorandum requesting sanctions, was filed June 28, 2004. App. at 19. The District Court also stated that its electronic file notification system had provided plaintiffs's counsel email notification of the motion and of the court's order at two different email addresses. Karoly responds that the motion that was the subject of the email notification was titled "motion to enforce settlement," like the earlier motion, and gave no notice that it was a motion for sanctions rather than simply a repeat of the prior motion. As noted above, our examination of the docket, a public record, bears out

9

Karoly's contention as the docket lists the second motion almost identically to the first. See supra l. 104–106, 129-134.  It does not mention a request for sanctions.  If this was the form of the email notification that was sent to Karoly, he may not have received prior notice sufficient to comply with the requirements of due process.  See Eash, 757 F.2d at 570.

Other evidence in the record is consistent with Karoly's contention that he never received the motion.  Karoly states that as soon as he received the order he sent a letter dated June 19, 2004 indicating his desire to be heard regarding defense counsel's motion. Karoly filed a motion for reconsideration on July 26, 2004, in which he argued that he failed to respond to the defendants' motion because he had never been served with the motion.  Attached to Karoly's motion for reconsideration was an affidavit from the attorney at Karoly's firm who was responsible for "receiving, opening, reading, logging, and distributing" all of the mail arriving at Karoly's law offices.  App. at 243. The attorney attested that the motion had not been received by U.S. mail, and that he was on "heightened vigilance" for any items from defendants' law firm because of the ongoing dispute between the parties.  App. at 243.  Because the facts were not adequately developed in the District Court, whether Karoly received adequate notice and an opportunity to be heard can only be resolved after a hearing at which both parties have the opportunity to set forth their positions before the district judge as a neutral fact finder.

The same can be said of Karoly's motion for reconsideration, which is based on

10

the same disputed facts. In that motion, Karoly requested that the Court vacate the order of July 23, 2004, stating that failure to receive service satisfied Rule 60(b)'s mandate for "mistake, inadvertence, surprise, or excusable neglect," and asked the Court to grant him leave to file an answer to the motion for sanctions. App. at 241. Defendants responded that plaintiffs had not met the requirements for relief under Rule 60(b) because they had not demonstrated excusable neglect or any other basis for relief.

The District Court denied the motion on September 30, 2004, without a hearing, finding that plaintiffs did not merit relief from the judgment because "it is clear that plaintiffs' counsel was apprised of the pending motion" either electronically or by mail. App. at 24. The District Court concluded: "We do not find any exceptional circumstances warranting relief under Rule 60(b)." App. at 24.

We respectfully disagree. If the facts are as Karoly contends they would constitute exceptional circumstances and would have warranted at the least an order under Rule 60(b). See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 388 (1993) (noting that omissions due to carelessness are encompassed within the concept of excusable neglect); In re O'Brien Envtl. Energy, Inc. v. NRG Energy, Inc., 188 F.3d 116, 129 (3d Cir. 1999) (holding that neglect caused in part by opposing party's failure to alert appellant that application encompassed objections to which appellant was required to respond was excusable). This court reviews the District Court's denial of a motion under Rule 60(b) for abuse of discretion. Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 269 (3d

11

Cir. 2002).

Nothing on the record demonstrates that the District Court applied the four-prong test for excusable neglect: the danger of prejudice, the length of the delay in response and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the moving party, and whether the moving party acted in good faith. Pioneer, 507 U.S. at 395; In re O'Brien, 188 F.3d at 126 (applying Pioneer's four-part test for excusable neglect to a Rule 60(b) motion).

Although the ultimate determination is for the District Court, it is not clear from the record that Karoly's failure to respond to the motion did not constitute excusable neglect. Delay was minimal, as Karoly filed his motion for reconsideration on July 26, 2004, just days after the District Court entered its order requiring Karoly to pay over $13,000 in costs and fees, and less than a month after the defense filed its motion to impose sanctions on June 28, 2004. The impact of this delay was negligible, as the underlying disputes could have been presumably resolved after a short hearing.

The nearly $8 million judgment dwarfs the amount of sanctions imposed, but $13,606.64 is not an insignificant amount of money for an individual attorney. While there may be facts on the record to support the District Court's decision to impose sanctions, they also indicate that Karoly may have been acting out of an excess of zeal for his clients' rights, however wrongheaded, including a belief that he would forfeit the right to pursue interest on the judgment and retrieve personal property belonging to the

12

deceased by providing defense counsel with a release. It is at least questionable whether Karoly was acting out of bad faith, which is a requirement for sanctions under 28 U.S.C. § 1927. Hackman, 932 F.2d at 242. Karoly's professional reputation is at stake. The District Court took note in its order imposing sanctions of a different case in which another judge of the same district had characterized Karoly's behavior as an "inexcusable form of neglect-gross negligence." Joseph v. Gap, Inc., 1999 WL 106899, at *3 (E.D. Pa. March 1, 1999). App. at 24. Karoly argues that the court in the Joseph litigation stated that there was some confusion over his role in the litigation and that it cannot fairly be used as precedent for characterizing him as acting in "willful bad faith" in this case. We express no opinion on the reference to counsel's conduct in other litigation, but we have held that sanctions under § 1927 must only impose costs and expenses that result from the particular misconduct in the litigation at issue. Martin, 63 F.3d at 1263-64.

We also note that the District Court erred as a matter of law in imposing sanctions upon Karoly's client under 28 U.S.C. § 1927. That statute only authorizes the imposition of sanctions on counsel not on parties.

We feel impelled to include a comment about what we regard as the unfortunate animosity between the counsel. Both practice law in Allentown where the legal community is relatively small in comparison to that in larger cities, such as Philadelphia. Counsel are bound to run into each other in numerous situations in the future and we hope that there is some mechanism (perhaps through the bar association) by which the fever

13

arising from this case can be tempered.

We recognize that the District Court may have been obliged throughout the litigation to deal with counsel snapping at each other and possibly even at the court. Nonetheless, because it is disputed whether Karoly received adequate notice of the motion for sanctions and was given an opportunity to respond, we must vacate the order of the District Court imposing sanctions and the order denying reconsideration and remand for further proceedings in accordance with this opinion.